**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HEROLD A. LUMA, | : | |
| | : | Civil Action No. 13-6292 (ES) |
| Petitioner, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| OSCAR AVILES, | : | |
| | : | |
| Respondent. | : | |

**SALAS**, District Judge

Petitioner Herold Luma ("Petitioner"), an immigration detainee presently confined at the Hudson County Correctional Center in Kearny, New Jersey, has submitted a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241,[1] challenging his mandatory detention during his immigration removal proceedings. Because it appears from review of the petition that Petitioner is not entitled to the relief he seeks at this time, the Court will dismiss the petition.

**I.    BACKGROUND**

Petitioner is a native and citizen of Haiti. (D.E. No. 6, Resp't's Answer ¶ 1). He was a lawful permanent resident of the United States from his date of entry, on or about September 16, 2001, until December 31, 2013, the date his order of removal became final. (*Id.*). On March 8, 2007, Petitioner was convicted in the New York Supreme Court for attempted sale of a controlled dangerous substance (cocaine) in the third degree. (*Id.* ¶ 2). On December 2, 2010, United States

---

[1] Section 2241 provides in relevant part: "(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. . . . (c) The writ of habeas corpus shall not extend to a prisoner unless . . . (3) He is in custody in violation of the Constitution or laws or treaties of the United States . . . ." 28 U.S.C. § 2241.

Immigration and Customs Enforcement ("ICE") detained Petitioner. (*Id.* ¶ 3). On or about January 31, 2011, ICE transferred him into the custody of the U.S. Marshal Service. (*Id.*). After various proceedings in the immigration court, on February 14, 2011, the Immigration Judge ("IJ") administratively closed Petitioner's case because he was no longer in immigration custody. (*Id.* ¶ 7). On March 19, 2012, after Petitioner finished serving his criminal sentence, the U.S. Marshal Service transferred Petitioner back to ICE custody. (*Id.* ¶ 10). Petitioner has remained in ICE custody since that date. (*Id.*).

On April 30, 2012, Petitioner appeared without an attorney before the immigration court for a first master hearing because his attorney had requested leave to withdraw. (*Id.* ¶ 11). Petitioner requested time to obtain new counsel, and the IJ granted his request and adjourned the hearing. (*Id.*). On May 22, 2012, Petitioner appeared without a lawyer for a second master hearing, and he stated that he wished to represent himself and to apply for relief from removal. (*Id.* ¶ 12). The IJ granted Petitioner another adjournment to allow him to supply evidentiary support and obtain a lawyer if he wished. (*Id.*). On June 13, 2012, Petitioner appeared pro se for a third master hearing, and, though he submitted some evidence, the IJ adjourned to allow him to submit additional evidence. (*Id.* ¶ 13).

On August 22, 2012, Petitioner appeared without an attorney for an individual (*i.e.* evidentiary) hearing. (*Id.* ¶ 14). Since Petitioner did not have an attorney and one of his key witnesses failed to appear, the IJ granted him an adjournment. (*Id.*). On September 7, 2012, Petitioner appeared a second time for an individual hearing. Although his witness appeared, she needed a Creole interpreter. (*Id.* ¶ 15). Therefore, the IJ adjourned the hearing. (*Id.*).

On November 19, 2012, Petitioner appeared pro se a third time for an individual hearing, at which time he claimed that he had fallen in October and injured his head and back. (*Id.* ¶ 16). Petitioner stated that the injury affected his memory, and the IJ felt constrained to investigate the circumstances to see if the claimed injury would affect Petitioner's ability to represent himself or testify. (*Id.*). The IJ instructed Petitioner to file a statement describing what his difficulties were as a result of the fall, and the case was adjourned with instructions to the parties to obtain Petitioner's medical records. (*Id.*).

On December 3, 2012, Petitioner appeared pro se for a master hearing, but produced no medical records regarding his supposed head injury nor any witness statements. (*Id.* ¶ 17). The IJ adjourned the proceeding to allow Petitioner time to obtain and submit those documents. (*Id.*). On December 19, 2012, having submitted his medical record, Petitioner appeared pro se for a second master hearing. (*Id.* ¶ 18). Since Petitioner indicated that he was in the process of obtaining counsel, the IJ adjourned the hearing. (*Id.*). On January 22, 2013, Petitioner appeared with new counsel for a master hearing, and the IJ adjourned to give counsel time to prepare. (*Id.* ¶ 19). On March 5, 2013, Petitioner and his counsel appeared for a master hearing wherein Petitioner's counsel advised the court that a doctor evaluated Petitioner and did not diagnose any cognitive or memory problems. (*Id.* ¶ 20). The IJ adjourned to allow Petitioner time to file witness affidavits and advise the court as to which witnesses would need an interpreter. (*Id.*).

On May 2, 2013, Petitioner appeared pro se for an individual hearing, but the IJ was forced to adjourn the hearing because Petitioner's witness failed to appear. (*Id.* ¶ 21). On June 27, 2013, Petitioner and his witnesses appeared, but the court did not have enough time to conduct the hearing, and therefore the IJ adjourned the case. (*Id.*). On August 9, 2013, the immigration court

3

conducted an evidentiary hearing, and, at the close of the hearing, the IJ ordered Petitioner removed. (*Id.* ¶ 22). Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"). (*Id.* ¶ 23). On October 21, 2013, before the BIA ruled on Petitioner's appeal, Petitioner filed the instant petition for habeas corpus relief, which challenges his mandatory detention pursuant to 8 U.S.C. § 1226(c) on the grounds that: (1) ICE failed to immediately take him into custody when he was released from criminal incarceration, and (2) he has a substantial challenge to removal. (D.E. No. 1, Pet.). On December 31, 2013, the BIA dismissed Petitioner's appeal and issued him a final order of removal. (Resp't's Answer ¶ 26). On March 4, 2014, Petitioner filed an appeal and a request for stay of removal with the Second Circuit. *See Luma v. Holder*, Civil Action No. 14-722 (2d Cir. 2014). On July 10, 2014, the Second Circuit granted the Government's motion to dismiss the petition and dismissed the request for a stay of removal as moot. *Id.*

## II. DISCUSSION

### A. Legal Standard

Federal law sets forth the authority of the Attorney General to detain aliens in removal proceedings, both before and after issuance of a final order of removal.

8 U.S.C. § 1226 governs the detention of aliens during their removal proceedings ("pre-removal-order detention"). Section 1226(a) authorizes the Attorney General to arrest, and to detain or release, an alien pending a decision on whether the alien is to be removed from the United States, except as provided in subsection (c). Section 1226(a) provides, in relevant part:

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States.

> Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
>
> (1) may continue to detain the arrested alien; and
>
> (2) may release the alien on—
>
> > (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
> >
> > (B) conditional parole; . . . .

8 U.S.C. § 1226(a).

Certain criminal aliens, however, are subject to mandatory detention pending the outcome of removal proceedings, pursuant to 8 U.S.C. § 1226(c)(1), which provides in relevant part:

> The Attorney General shall take into custody any alien who—
>
> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

8 U.S.C. § 1226(c)(1).

The detention and removal of an alien subject to a final order of removal ("post-removal-order detention") is governed by 8 U.S.C. § 1231(a). Section 1231(a)(1) requires the Attorney

5

General to attempt to effectuate removal within a ninety-day "removal period." The removal period commences on the latest of the following:

> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B). "An order of removal made by the immigration judge at the conclusion of proceedings . . . shall become final . . . [u]pon dismissal of an appeal by the Board of Immigration Appeals." 8 C.F.R. § 1241.1(a). "During the removal period, the Attorney General shall detain the alien." 8 U.S.C. § 1231(a)(2). Section 1231(a)(6) permits continued detention if removal is not effectuated within ninety days. However, the Supreme Court has held that such post-removal-order detention is subject to a temporal reasonableness standard. Specifically, once the presumptively reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. *See Clark v. Martinez*, 543 U.S. 371, 386-87 (2005); *Zadvydas v. Davis*, 533 U.S. 678, 699-701 (2001).

### B.   Analysis

Here, Petitioner became subject to a final order of removal on December 31, 2013, during the pendency of this matter. As of that date, Petitioner's detention ended under the pre-removal-order detention statute, 8 U.S.C. § 1226, and he became detained under the post-removal-order detention statute, 8 U.S.C. § 1231.

Because Petitioner is no longer detained pursuant to § 1226, as he was at the time he filed this Petition, there is no longer a live "case or controversy" regarding Petitioner's pre-removal-order detention. *See* U.S. Const. art. III. Therefore, the petition will be dismissed as moot. *See Rodney v. Mukasey*, 340 F. App'x 761, 763 (3d Cir. 2009); *De La Teja v. United States*, 321 F.3d 1357, 1361-63 (11th Cir. 2003); *Reyna v. Hendricks*, No. 12-2665, 2012 WL 6697464, at *2 (D.N.J. Dec. 21, 2012).[2]

To the extent Petitioner also intended to raise a challenge under § 1231 in his petition, that claim is premature. As noted above, § 1231(a)(2) requires the detention of aliens during the ninety-day removal period and permits detention thereafter up to a presumptively reasonable six-month period. *See Zadvydas*, 533 U.S. at 683, 701. Once the presumptively reasonable six-month period of post-removal-order detention has passed, a detained alien must be released if he can establish that his removal is not reasonably foreseeable. That is, the alien bears the initial burden of establishing that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which the government must come forward with evidence to rebut that showing. *Id.* at 701. There is no absolute entitlement to release at the end of the presumptively reasonable six-month removal period.

Here, Petitioner was not detained under § 1231 at the time he filed the Petition. To state a claim under *Zadvydas*, the presumptively reasonable six-month removal period must have expired at the time the Petition was filed; any earlier challenge to post-removal-order detention is premature and subject to dismissal. *See id.*; *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir.

---

[2] Because Petitioner is now subject to a final order of removal, he will not be subject to pre-removal-order detention in the future. Hence, the narrow exception for cases that are capable of repetition yet evading review does not apply here. *See De La Teja*, 321 F.3d at 1363.

2002) ("This six-month period thus must have expired at the time [petitioner's] § 2241 petition was filed in order to state a claim under *Zadvydas*."). Moreover, Petitioner has put forth no evidence to indicate that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See Zadvydas*, 533 U.S. at 701. Such dismissal is, of course, without prejudice to any claim Petitioner may have cause to assert should his future post-removal-order detention become unconstitutionally prolonged.

## III. CONCLUSION

For the reasons set forth above, Petitioner's challenge to his pre-removal-order detention will be dismissed as moot, and any challenge to his post-removal-order detention will be dismissed without prejudice. An appropriate order follows.

Dated:

Esther Salas, U.S.D.J.

8